

LINK: 7

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| X17, Inc., | Case No. CV 06-7608 GAF (JCx) |
| Plaintiff, | |
| v. | ORDER REGARDING DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM PURSUANT TO RULE 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE |
| MARIO LAVANDEIRA, dba Perez Hilton, | |
| Defendant. | |



## I.
## INTRODUCTION AND BACKGROUND

Plaintiff X17, Inc. operates an archive of photographs in which it allegedly owns copyrights. Defendant Mario Lavandeira does business under the name "Perez Hilton" and operates the website perezhilton.com. The website is a blog that provides a series of journal-like entries featuring celebrity gossip written by Lavandeira, and which allegedly generates millions of users and – consequently – thousands of dollars in advertising revenue each day. X17 alleges that perezhilton.com has maintained its

popularity in large part because, since March of 2006, Lavandeira has posted on the site more than 80 "virtually identical reproductions" of X17's copyrighted photographs. The photographs are essentially paparazzi-type, candid shots that depict celebrities engaged in their typical day-to-day activities – for example, Heather Locklear leaving a lunch meeting, Nicole Richie grocery shopping, and Britney Spears exposing herself.

Apparently realizing that Lavandeira's blog had begun to deprive it of revenue, X17 initially filed only the predictable claim for copyright infringement, but later added a second cause of action under a theory known as "hot news misappropriation," a term that refers not to the salacious or arousing quality of the published material but rather to its time sensitive nature. The claim essentially advances the theory that, in addition to infringing on X17's interest in the photographs' copyrights, Lavandeira has at times deprived X17 of a distinct interest in being the first to publish them.

Lavandeira now moves under Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the "hot news" claim, contending that it is preempted by the Copyright Act or not cognizable under California law. Alternatively, Lavandeira contends that photographs cannot constitute "hot news" because the tort is limited to written words and data.

The Court disagrees. The hot news claim, which the Court concludes encompasses photographs as well as words and data, is a subset of the common law tort of misappropriation, which California recognizes. Moreover, the Court is persuaded by authority from the Second Circuit, which is entirely consistent with California case law and explains why the hot news subset survives Copyright Act preemption.

Accordingly, Lavandeira's motion to dismiss is **DENIED**.

//
//
//

2

//

//

## II.

## DISCUSSION

### A. THE LEGAL STANDARD FOR A RULE 12(B)(6) MOTION

A motion to dismiss a complaint tests the legal sufficiency of the claims asserted. Fed. R. Civ. P. 12(b)(6). A court may not dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Thus, dismissal pursuant to Rule 12(b)(6) is proper only where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988). The Court accepts all factual allegations pleaded in the complaint as true in deciding a motion to dismiss for failure to state a claim; in addition, it construes those facts and draws all reasonable inferences from them in favor of the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996).

### B. ANALYSIS

#### 1. OVERVIEW OF THE "HOT NEWS" MISAPPROPRIATION TORT

The "hot news" tort is a particularly hardy species of the common law tort of unfair competition through misappropriation that – at least in some jurisdictions – has managed to survive even after the 1976 amendments to the Copyright Act preempted most misappropriation claims. The misappropriation genus originated in large part with the Supreme Court's decision in International News Service v. Associated Press, 248 U.S. 215 (1918) ("International News"). That case involved two wire services that transmitted news stories to member newspapers. International News Service lifted Associated Press ("AP") stories off the wire and sent them to its own members, and at times would send the stolen stories from the East Coast to the West Coast where,

because of the time differential, they had not been published, thus "scooping" AP. Id. at 231, 238. The Supreme Court held that International News Service's conduct was a common-law "misappropriation" of AP's property. Id. at 242.

Because International News was a pre-Erie case premised on federal common law, it is no longer binding precedent in its own right. Alcatel USA, Inc. v. DGI Techs., 166 F.3d 772, 788 n.59 (5th Cir. 1999). But the misappropriation theory International News espoused was later adopted in several states, including California. Balboa Ins. Co. v. Trans Global Equities, 218 Cal. App. 3d 1327, 1342 (Ct. App. 1990) (recognizing general tort of misappropriation under California law and tracing it to International News); see also Alcatel USA, Inc., 166 F.3d at 788 (Texas law); Nat'l Basketball Ass'n v. Motorola, Inc., 105 F.3d 841 (2d Cir. 1997) ("NBA") (New York law); GAI Audio of N.Y., Inc. v. Columbia Broad. Sys., Inc., 27 Md. App. 172, 189-93 (Ct. Spec. App. 1975) (Maryland law). However, with the enactment of the 1976 amendments to the Copyright Act, many variants of the misappropriation tort were federally preempted. The Ninth Circuit explained that, after these amendments,

> A state law cause of action is preempted by the Copyright Act if two elements are present. First, the rights that a plaintiff asserts under state law must be "rights that are equivalent" to those protected by the Copyright Act. 17 U.S.C. § 301(a); 1 Nimmer [on Copyright], § 1.01[B], at 1-11 [("Nimmer")]. Second, the work involved must fall within the "subject matter" of the Copyright Act as set forth in 17 U.S.C. §§ 102 and 103. Id.

Kodadek v. MTV Networks, Inc., 152 F.3d 1209, 1212 (9th Cir. 1998). The first requirement of equivalency means that

> If under state law the act of reproduction, performance, distribution or display, no matter whether the law includes all such acts or only some, will in itself infringe the state created right, then such right is preempted. **But if other elements are required, in addition to or instead of, the acts of reproduction, performance, distribution or display**, in order to constitute a state created cause of action, then the right does not lie 'within the general scope of copyright,' and there is no preemption.

1 Nimmer § 1.01[B], at 1-13 (emphasis added). The Second Circuit has recently identified a claim that contained such additional elements.

4

In its 1997 NBA decision, the Second Circuit held that an International News-type "hot news" version of the misappropriation tort (arising under New York law) was not "equivalent" to a copyright infringement claim, and thus survived Copyright Act preemption. NBA, 105 F.3d at 845. That case held that the "hot news" misappropriation tort includes the following elements:

> (i) a plaintiff generates or gathers information at a cost; (ii) the information is time-sensitive; (iii) a defendant's use of the information constitutes free riding on the plaintiff's efforts; (iv) the defendant is in direct competition with a product or service offered by the plaintiffs; and (v) the ability of other parties to free-ride on the efforts of the plaintiff or others would so reduce the incentive to produce the product or service that its existence or quality would be substantially threatened.

Id. The court explained that the claim was not preempted because it contained extra elements not essential to a copyright infringement claim, including "(i) the time-sensitive value of factual information, (ii) the free-riding by a defendant, and (iii) the threat to the very existence of the product or service provided by the plaintiff." Id. at 853. Unlike copyright, which essentially protects the particular expression of an idea, these elements protect the plaintiff's interest in, among other things, the time-sensitive nature of the information and the investment associated with collecting the time sensitive data, thus ensuring that the information would be made available to the public by profit-seeking entrepreneurs. Id.

The Court noted that it was not alone in recognizing the distinction between the rights protected by copyright and those protected under the hot news misappropriation theory. Citing to the legislative history of the 1976 amendments, the NBA court demonstrated that its holding squared precisely with congressional recognition that "it is generally agreed that a 'hot-news' INS-like claim survives preemption." Id. The legislative history to which the court referred is a House Report that states:

> "Misappropriation" is not necessarily synonymous with copyright infringement, and thus a cause of action labeled as "misappropriation" is not preempted if it is fact based neither on a right within the general

> scope of copyright as specified by section 106 nor on a right equivalent thereto. For example, state law should have the flexibility to afford a remedy (under traditional principles of equity) against a consistent pattern of unauthorized appropriation by a competitor of the facts (i.e., not the literary expression) constituting "hot" news, whether in the traditional mold of International News Service v. Associated Press, 248 U.S. 215 (1918), or in the newer form of data updates from scientific, business, or financial data bases.

H.R. No. 94-1476 at 132 (1976), reprinted in 1976 U.S.C.C.A.N. 5659, 5748.

Although NBA's reasoning is persuasive, at least one district court has rejected it, albeit in conclusory fashion. Citing only a law review article and a student note, the court in Lowry's Reports, Inc. v. Legg Mason, Inc., 271 F. Supp. 2d 737, 756 (D. Md. 2003), questioned the validity of NBA's "extra" elements.

> The cost of generating the information, its time-sensitivity, and direct competition between the parties merely define pre-existing conditions; the threat to the plaintiff's business merely identifies a consequence of the act of "free-riding." See Nicholas Khadder, Note, Nat'l Basketball Ass'n v. Motorola, Inc., 13 Berkeley Tech. L.J. 3, 14-15 (1998).

Id. at 756.

This out-of-circuit district court opinion is neither controlling nor persuasive. The Court finds the comment regarding "pre-existing conditions" puzzling because it suggests that only actions can constitute an "element" of a claim. Such a conclusion finds no support in the law. For example, the existence of a contract describes a "pre-existing condition" but a plaintiff suing for breach must prove the contract and its terms as an essential element of a claim for its breach. Likewise, the existence of an economic relationship between two parties may describe a pre-existing condition, but that relationship is essential to a claim of interference with prospective economic advantage. In short, the Court finds no support in the law for the Lowry's court's suggestion that "events" or "actions" can be elements of a claim, but that "conditions" cannot. Thus, the Court concludes NBA correctly held that the element of time-sensitive information constitutes a meaningful addition to the elements of copyright infringement, taking the tort outside the scope of federal preemption. While most material subject to copyright has a significant, sometimes indefinite, shelf-life, the

6

value of "hot news" depends entirely on its being timely published – and once disseminated, the "hot news" ceases to be "news" at all, instead taking on possible historical significance, or, in the case of information regarding a trip to the grocery, no significance at all. Lowry's inexplicably ignores these considerations.

The Court also notes that Lowry's reached its conclusions without addressing the House Report cited above. The report is a powerful indicator that Congress had no intention that the 1976 amendments would preempt International News-type "hot news" torts, and thus a strong indication that the statute enacted did not in fact do so.

In short, Lowry's notwithstanding, the NBA case is extremely persuasive that a state law cause of action for "hot news" should not be preempted.

### 2. CALIFORNIA EXPRESSLY RECOGNIZES A MISAPPROPRIATION TORT CAPABLE OF AVOIDING PREEMPTION

The question thus becomes whether the hot news tort is cognizable under California law, and whether, if recognized, the tort survives preemption.

Lavandeira contends Balboa Insurance Co. v. Trans Global Equities, 218 Cal. App. 3d 1327 (Ct. App. 1990) answers both questions, citing it both for the proposition that California does not recognize a hot news tort (Reply at 4), and that the tort is preempted (Mot. at 4). Lavandeira is incorrect. Although the Balboa Insurance court cited International News in its opinion, the case had nothing to do with "hot news." Rather, the case involved a claimed misappropriation of the contents of a computer program, which do not derive their value from their time-sensitive nature. In assessing the claimed software misappropriation, the court cited to the generic elements of a misappropriation claim: (1) that the plaintiff has invested substantial time and money in development of its property; (2) the defendant has appropriated the property at little or no cost; and (3) the plaintiff has been injured by defendant's conduct, id. (citing Scott, Computer Law § 5.30, at 5-28 (1980)), and concluded that, because these elements were, in a broad sense, duplicative of a claim for copyright infringement, the tort claim was preempted. Balboa Ins. Co., 218 Cal. App. 3d at

1342.  Even so, the court indicated the result could be different if the facts included "an extra element such as breach of fiduciary duty, breach of confidentiality or improper revelation of a trade secret."  Id. at 1353.  With those words, the court left open the possibility that, in an appropriate case, a claim of misappropriation might not be preempted.  Thus, contrary to Lavandeira's suggestion (Reply at 5-6), the omission of any discussion of the "hot news" tort should not be read to indicate a rejection of the tort itself or that California courts would hold the tort preempted.[1]  Accordingly, the Court rejects Lavandeira's argument that Balboa Insurance precludes X17's claim.[2]

      Even more, Balboa Insurance strongly indicates that California courts would uphold the "hot news" tort.  The case affirms that California law recognizes the misappropriation tort in the broad sense, of which the "hot news" tort is a subset, and acknowledges that it survives preemption when accompanied by additional elements distinguishing it from a copyright infringement cause of action.  This squares entirely with the reasoning of the Second Circuit's NBA case, and thus the Court concludes that California would recognize the "hot news" species of the misappropriation tort as a cognizable theory of recovery.[3]

---

[1] For similar reasons, the Court is unpersuaded by Lavandeira's claim that the Fifth Circuit in Alcatel USA found the "hot news" tort preempted. (Reply at 2.) To the contrary, Alcatel USA did not address the distinguishing elements of the tort identified by the Second Circuit in NBA; rather, it merely stated that under Texas law, misappropriation claims required the same elements as the Balboa Insurance court's formulation of California law. Alcatel USA, 166 F.3d at 788. In effect, then, Alcatel USA did not address the "hot news" species of the tort at all, as should be evident by the fact that its only reference to the NBA case was to cite it for the general proposition that claims containing an element additional to copyright claims are not preempted. Id. at 787 & n.45.

[2] Equally unavailing is Lavandeira's citation to Kodadek v. MTV Networks, 152 F.3d 1209 (9th Cir. 1998), which is merely a garden-variety unfair competition case and in no way involved the hot news tort.

[3] Other district courts in California are in accord, though with varying depths of analysis that belie X17's contention that they "found" that the misappropriation tort survives copyright preemption in California. (Opp. at 7.) Indeed, two of the cases X17 cites merely refer parenthetically to NBA's hot news holding, and instead cite it mainly for the familiar proposition
(continued...)

8

### 3. X17'S ALLEGATIONS STATE A CLAIM UNDER HOT NEWS TORT

Having determined that the hot news tort is cognizable in California, the question becomes whether X17 has stated the claim. Lavandeira contends that the tort should be strictly construed, and that other cases endorsing the tort are distinguishable because they involved: (1) "raw data" or "purely factual information" as opposed to photographs and (2) material that could not be protected under the Copyright Laws. (Mot. at 6-7.) Again, the Court disagrees. First, the tort is conceptually broad enough to include photographs, particularly because the Supreme Court has referred to photographs as conveying "information" (albeit in the context of Fourth Amendment jurisprudence). Dow Chem. Co. v. United States, 476 U.S. 227, 238 (1986) (aerial surveillance photography captures and conveys "information"); see also Kyllo v. United States, 533 U.S. 27, 34 (2001) (thermal image device captures and conveys "information"). Indeed, nothing in either International News or NBA suggests that the medium of the information is important. Second, the suggestion that the material at issue must be "uncopyrightable" seems merely to import Lavandeira's continuing misconception of the two requirements of copyright preemption – the lack of either of which will suffice to save a state cause of action – into the discussion of the hot news tort's substantive requirement. In short, this Court does not read International News or NBA to require that the material at issue be immune from copyright protection, and Lavandeira offers no argument why they would. To the contrary, the extensive preemption discussion in NBA presupposes that the hot news tort would cover copyrightable material; if it did not, the tort would

---

(...continued)
that "[i]f a state cause of action entails 'extra elements' beyond the basic elements of copyright, and protects rights that are 'qualitatively different' from those protected by copyright, it survives preemption." Nat'l Conference of Bar Examiners v. Saccuzzo, No. 03CV0737BTM, 2003 WL 21467772, *10 (S.D. Cal. June 10, 2003); Educ. Testing Serv. v. Simon, 95 F. Supp. 2d 1081, 1091 (C.D. Cal. 1999). Only slightly more persuasive is Pollstar v. Gigmania, Ltd., 170 F. Supp. 2d 974 (E.D. Cal. 2000), which, without extensive explanation, upheld a hot news claim against a motion to dismiss. Id. at 979-80.

obviously avoid preemption pursuant to 17 U.S.C. § 301(b)(1), which specifies that nothing in the Copyright Act "limits any rights or remedies under the common law or statutes of any State with respect to . . . subject matter that does not come within the subject matter of copyright." Clearly, then, hot news may be subject to copyright.

Moreover, Lavandeira cites no contemporary support (or controlling authority) for his premise that the "hot news" tort need be strictly construed. Instead, Defendant relies on a 1929 case which, though made impressive by the reputation of its author, expresses skepticism that seems directed at a broad reading of the generic misappropriation tort, and that has been adequately addressed by the limited construction promulgated in NBA. Cheney Bros. v. Doris Silk Corp., 35 F.2d 279, 280 (2d Cir. 1929) (Hand., J.). In short, the NBA case acknowledged the skepticism at the generic cause of action, 105 F.3d at 852 n.7, and addressed it by identifying the elements of the International News case that must be present today in order for a International News-style hot news tort arising under state law to survive preemption. So long as those elements are present, then, no further narrowing is required. Cf. Restatement (Third) of Unfair Competition § 38 cmt. c (1995) (noting that the aspects of the International News fact pattern that "present the most compelling case for protection against appropriation" were that AP had been deprived of its "lead-time advantage" on the West Coast and thus "faced a direct threat to its primary market by a competitor who had incurred none of the development costs associated with collecting the news"). Moreover, to the extent Cheney Bros. was concerned that International News style actions conflicted with the congressional scheme espoused in the Copyright Act, such concern should be more than alleviated by the House Report cited above, which could not have more clearly indicated that the 1976 amendments were not enacted with the purpose of eliminating the "hot news" tort through federal preemption.

In light of the foregoing, the X17's pleading is reasonably clear. It alleges that: (1) it expends substantial costs and resources to gather, obtain, and create the

photographs Lavandeira has disseminated; (2) the photographs are time-sensitive; (3) the parties are direct competitors; (4) Lavandeira is earning revenue by free-riding on the substantial hard work of X17; (5) if the activities continue, they will remove X17's incentive to gather the photographs and threaten the continued existence of X17's business; and (6) Lavandeira's activities have substantially harmed X17. (First Amended Complaint ¶¶ 77-81.) Whether or not X17 can prove its case is a matter that the Court does not address in this ruling. The Court concludes only that X17 has adequately pled the three elements required to state a claim for California's misappropriation tort, Balboa Ins. Co., 218 Cal. App. 3d at 1342, and the additional three elements identified by the Second Circuit that place the claim within the hot news subset, NBA, 105 F.3d at 845. X17 thus adequately states the hot news claim (notwithstanding any irony in the suggestion that Ms. Spears' travails qualify as newsworthy).

## IV.

## CONCLUSION

Accordingly, Lavandeira's motion to dismiss is **DENIED**. The hearing on this matter, previously scheduled for Monday, February 12, 2007, is **VACATED**. Fed. R. Civ. P. 78; Local Rule 7-15.

IT IS SO ORDERED.

DATED: February 9, 2007

Judge Gary Allen Feess
United States District Court

11

LINK: 7

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| X17, Inc., <br><br> Plaintiff, <br><br> v. <br><br> MARIO LAVANDEIRA, dba Perez Hilton, <br><br> Defendant. | Case No. CV 06-7608 GAF (JCx) <br><br> ORDER REGARDING DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM PURSUANT TO RULE 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE |

I.

**INTRODUCTION AND BACKGROUND**

Plaintiff X17, Inc. operates an archive of photographs in which it allegedly owns copyrights. Defendant Mario Lavandeira does business under the name "Perez Hilton" and operates the website perezhilton.com. The website is a blog that provides a series of journal-like entries featuring celebrity gossip written by Lavandeira, and which allegedly generates millions of users and — consequently — thousands of dollars in advertising revenue each day. X17 alleges that perezhilton.com has maintained its

# Group Send Report

| | |
|---|---|
| Time | : Feb-09-07  12:11pm |
| Tel line | : +2138942615 |
| Name | : JUDGE GARY ALLEN FEESS |

Job number            : 497

Date                  : Feb-09 12:01pm

Document pages        : 11

Start time            : Feb-09 12:01pm

End time              : Feb-09 12:11pm

Successful

    Fax number

        ☎917144348756
        ☎913105579101
        ☎913102010045

Unsuccessful                                                                                            Pages sent