**FREEDMAN & TAITELMAN LLP**
BRYAN J. FREEDMAN (SBN 151990)
e-mail: bfreedman@ftllp.com
MATTHEW. VOSS (198728)
1901 Avenue of the Stars, Suite 500
Los Angeles, California 90067
Telephone: (310) 201-0005
Facsimile: (310) 201-0045

**DOLL AMIR & ELEY LLP**
GREGORY L. DOLL (SBN 193205)
e-mail: gdoll@dollamir.com
MICHAEL M. AMIR (SBN 204291)
e-mail: mamir@dollamir.com
1888 Century Park East, Suite 1106
Los Angeles, California 90067
Telephone: (310) 557-9100
Facsimile: (310) 557-9101

Attorneys for Defendant
MARIO LAVANDEIRA dba Perez Hilton

ORIGINAL

FILED
2007 DEC 17 PM 5:20
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

X17, INC., a California corporation,

              Plaintiff,

    vs.

MARIO LAVANDEIRA, dba Perez
Hilton, and DOES 1 through 10,
inclusive,

              Defendants.

CASE NO. CV 06-07608 VBF (JCx)

**DEFENDANT'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

Date:    January 28, 2008
Time:    1:30 p.m.
Room:   9

## TABLE OF CONTENTS

I.    Introduction..................................................................................................2

II.   Statement Of Facts.......................................................................................2

      A.  The Parties ..........................................................................................2

            1.  Plaintiff X17...............................................................................2

            2.  Mario Lavandeira.......................................................................3

      B.  X17's Lawsuit Against Mario Lavandeira............................................3

      C.  X17 Reluctantly Produces "Evidence" To Support copyright
            Ownership At The Preliminary Injunction Phase ...............................4

      D.  X17 Identifies Itself As The "Author" Of The Copyrights................5

            1.  X17 Represents The Photographs as "Works Made For Hire"...........5

            2.  X17 Creates Assignment Agreements For This Lawsuit...................5

            3.  X17 Fails To Disclose The Purported Assignment
                  Agreements To The Copyright Office ...................................7

            4.  X17 Did Not Pay Photographers Any Consideration For
                  Signing The Assignments ..................................................8

      E.  None Of The Photographers Are X17 Employees............................8

      F.  X17 And Lavandeira Are Not Competitors......................................9

III.  The Summary Judgment Standard .......................................................11

IV.  Lavandeira Is Entitled To Summary Judgment On X17's Copyright Claim.........11

      A.  X17's Copyright Registrations Are Invalid Because It Falsely Stated
            To The Copyright Office That The Photographs Were Works Made
            For Hire........................................................................................11

            1.  The Photographers Were Not Employees Of X17...............................12

i

2. The Photographs Were Not Specially Ordered Or Commissioned Works Under Section 101(2) ..................................... 13

B. An Invalid Copyright Registration Nullifies The Court's Subject Matter Jurisdiction In An Infringement Action ............................... 14

V. X17's Purported Assignment Agreements Do Not Cure X17's Invalid Registrations .................................................................................. 15

A. X17 Failed To Submit The Assignment Agreements To The Copyright Office ................................................................................. 16

B. Even If It Had Submitted The Assignments, X17 Cannot Use Supplementary Registration To Validate An Invalid Registration ................ 16

C. For At Least 56 Photographs, The Purported Assignments Occurred After X17 Submitted The Copyright Applications, And Thus Partial Summary Judgment Is Appropriate ................................................ 17

1. The January 22, 2007 "Assignments" ................................................ 18

2. The Undated November 2006 "Assignments" ................................... 18

3. The Improperly Assigned Photographs ............................................. 19

VI. At A Minimum, X17 Is Not Entitled To Statutory Damages, As It Failed To File For Registration Prior To The Alleged Infringement (Or Within The Three Month Grace Period) ........................................................... 20

A. The Requirements For Statutory Damages And Attorneys' Fees .................... 20

B. It Is Undisputed That X17 Cannot Meet The Requirements For Statutory Damages And Attorneys' Fees On At Least 18 Photographs .......... 20

C. Partial Summary Judgment Is Appropriate On The Issue Of Statutory Damages And Fees ................................................................. 23

VII. Lavandeira Is Entitled To Summary Judgment On X17's "Hot News" Claim ................................................................................................. 24

VIII. Conclusion ....................................................................................... 25

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ......................................................11

*Berlyn, Inc. v. Gazette Newspapers, Inc.*, 157 F. Supp. 2d 609 (D.Md. 2001)..................20

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ..................................................................11

*Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 109 S. Ct. 2166
    (1989)............................................................................................................................12

*Fred Wehrenberg Circuit of Theatres v. Moviefone*, 73 F. Supp. 2d 1044 (E.D.
    Mo. 1999)......................................................................................................................25

*International News Association v. Associated Press*, 248 U.S. 215 (1981) ......................25

*Johnson v. Jones*, 149 F.3d 494 (6th Cir. 1998) ................................................................20

*Johnson v. University of Virginia*, 606 F. Supp. 321 (D.C.Va. 1985)................................23

*Konisberg International v. Rice*, 16 F.3d 355 (9th Cir. 1994)............................................17

*Morgan, Inc. v. White Rock Distilleries, Inc.*, 230 F. Supp. 2d 104 (D. Me. 2002) ..........11

*In re Napster, Inc. Copyright Litigation*, 191 F. Supp. 2d 1087 (N.D.Cal.,2002)...............1

*National Basketball Association v. Motorola*, 105 F.3d 841 (2d Cir. 1997) .....................24

*Qualey v. Caring Center of Slidell*, 942 F. Supp. 1074 (E.D.La. 1996) ...........................23

*Rubloff v. Donahue*, 31 U.S.P.Q. 2d 1046 (N.D. Ill. 1994) ...............................................16

*William A. Graham Co. v. Haughey*, 430 F. Supp. 2d 458 (E.D.Pa. 2006)......................24

## STATE CASES

*Torres-Negron v. J&N Records, LLC*, Nos. 06-2058, -2059, 2007 WL 2846117
    (1st Cir. Oct. 2, 2007) ..................................................................................................14

## FEDERAL STATUTES

37 C.F.R. § 201.5 ................................................................................................................16

17 U.S.C. § 101................................................................................................13

17 U.S.C. § 408................................................................................................16

17 U.S.C. § 412................................................................................................20

Fed. R. Civ. P. 56............................................................................................11

**MISCELLANEOUS**

*Restatement (Third) of Unfair Competition*, § 38þ............................................25

## I.    **INTRODUCTION**

Plaintiff X17, Inc. has alleged two claims against Mario Lavandeira: (1) copyright infringement; and (2) "hot news" misappropriation.  As established below, the uncontroverted facts establish that both claims fail, as a matter of law.

X17's copyright infringement claim fails because this Court lacks subject matter jurisdiction.  The Copyright Act provides that "no action for infringement of the copyright in any work shall be instituted until registration of the copyright claim has been made."  As courts in this district have observed, "copyright registration is a jurisdictional prerequisite to an infringement action."[1]  An invalid registration (involving material errors) nullifies the federal court's subject matter jurisdiction.  While X17 has applied for and obtained copyright registrations, none of is valid because X17 made material misrepresentations in each and every application.

In particular, X17's applications submitted to the United States Copyright Office identify X17 as the "author" of the photographs at issue under the doctrine of a "work made for hire."  That representation, however, was entirely false because the uncontroverted facts demonstrate that <u>none</u> of the photographs was the result of the "work for hire" doctrine.  There are only two exclusive means to establish a "work made for hire" relationship: (1) a work created by an employee during the course and scope of employment; (2) or certain works "specially ordered or commissioned" pursuant to a written agreement.  X17 has not, and cannot, establish either.

X17 cannot establish that its employees created the works in the course and scope of their employment because X17 has testified that <u>it has no employees.</u>  At their depositions, the photographers confirmed that they were not employees but rather independent contractors.

X17 likewise cannot show that it "specially ordered or commissioned" the

---

[1] *In re Napster, Inc. Copyright Litigation*, 191 F.Supp.2d 1087, 1101 (N.D.Cal.,2002).

1   photographs because the photographs at issue do not fall into any of the nine
2   enumerated categories that may be commissioned.  Moreover, X17 has failed to
3   come forward with any evidence to suggest that it signed "work made for hire"
4   agreements with the photographers.

5   In light of the foregoing, X17's representations to the Copyright Office about
6   copyright authorship were entirely inaccurate.  The undisputed facts establish that, in
7   an effort to save its copyright claim, X17's litigation attorneys created assignment
8   agreements that purportedly assigned the rights to the photographs to X17.  X17's
9   problem, however, is that it has failed to notify the Copyright Office of any of these
10  alleged assignments.  To make matters worse, many of the assignments were signed
11  after X17 filed its copyright applications.  In other words, X17 had no rights
12  whatsoever when it filed the applications.  Even more egregious is the fact that X17
13  had photographers "transfer" rights to photographs they did not even own.

14  Courts around the country have made it clear that when a party makes material
15  misrepresentation, as X17 has done here, the copyright registrations are invalid
16  thereby stripping the court of subject matter jurisdiction.  So it is here.

17  X17's second claim for "hot news" misappropriation also fails because the
18  uncontroverted facts demonstrate that X17 cannot meet one of the key elements for
19  the claim: that the parties be "direct competitors."  X17 has testified unequivocally
20  that it is not in competition with Lavandeira.

21  Lavandeira therefore respectfully requests that this Court grant summary
22  judgment.

23  **II.**   **STATEMENT OF FACTS**

24  **A.**   **The Parties**

25  **1. Plaintiff X17**

26  X17's first amended complaint ("FAC") contends that, since 2001, it "has
27  owned and operated one of the world's leading archives of celebrity-related
28  photographs . . ."  (FAC, ¶ 8.)  The FAC further alleges that, "[f]or valuable

2

1 consideration, X17 has licensed the rights to reproduce its copyrighted works in
2 copies, distribute copies of its copyrighted works, and publicly display copies of its
3 copyrighted works, or derivative versions thereof, to hundreds of magazines,
4 newspapers, television stations and other prominent media outlets throughout the
5 world." (*Id.*, ¶ 9.) According to X17, it "is particularly renowned for its timely
6 photographs covering breaking news events and its images of leading stories of the
7 day." (*Id.*, ¶ 10.)

8 **2. Mario Lavandeira**

9 Defendant Mario Lavandeira operates a website, www.perezhilton.com, on
10 which he reports celebrity news. (Declaration of Mario Lavandeira ("Lavandeira
11 Decl."), ¶ 3.) As part of the reporting, Lavandeira posts photos that depict
12 newsworthy events. (*Id.*, ¶ 4.) The photos have all been obtained from public
13 sources, previously published on the Internet. (*Id.*, ¶ 5.)

14 The photographs Lavandeira posts are almost always accompanied by text that
15 reports on the events. (Lavandeira Decl., ¶ 6.) While admittedly not always high art,
16 Lavandeira nonetheless draws on the photos and places commentary directly beneath
17 them. (*Id.*) He does not use the entire photographs, but rather only portions
18 necessary to report the news. (*Id.*) The quality of the photographs on the website is
19 not high and, as such, the photographs are not well suited for copying. (*Id.*)

20 **B. X17's Lawsuit Against Mario Lavandeira.**

21 On November 30, 2006, X17 filed a complaint alleging copyright infringement
22 arising out of Lavandeira's purported use of 52 photographs. (*See* Complaint.)
23 X17's complaint attached none of the photographs addressed in the complaint. The
24 complaint, furthermore, attached no copyright applications or registrations.

25 On January 5, 2007, Lavandeira filed his answer, which asserted "fair use" as
26 an affirmative defense. Shortly thereafter, X17 filed its FAC wherein it asserted a
27 second claim for relief: "hot news" misappropriation. The FAC also increased the
28 number of photographs that Lavandeira had allegedly infringed to 87. Once again,

1  X17 failed to attach either the photographs or the copyright registrations/applications.

2  **C.   X17 Reluctantly Produces "Evidence" To Support Copyright**

3  **Ownership At The Preliminary Injunction Phase.**

4  On January 29, 2007, X17 moved for a preliminary injunction. (Declaration of

5  Michael Amir, ¶ 2.)  The only evidence X17 offered in its moving papers to support

6  copyright ownership was the declaration of Brandy Navarre. (*Id.*, ¶ 5, Exhibit 88 to

7  Compendium of Exhibits to Michael Amir Declaration (the "Compendium").)  X17,

8  for instance, failed to attach copyright registration certificates or at least applications

9  for the same to its moving papers.  Furthermore, X17's moving papers contained no

10  assignment agreements between it and its photographers regarding ownership of the

11  copyrights.  The only "evidence" going to copyright ownership was the following

12  statement in Ms. Navarre's declaration: "X17 owns the copyrights to all the images

13  in [its] archive, including all of the photographs at issue in this case, <u>as they are</u>

14  <u>works made-for-hire.</u>"  (Exhibit 88 to Compendium, emphasis added.)

15  Lavandeira's opposition to the motion for a preliminary injunction highlighted

16  X17's evidentiary deficiencies and the fact that X17 had failed to demonstrate

17  copyright ownership.  In its reply, X17 finally came forward with the following

18  documents: (1) copies of the photographs to which it claimed ownership; (2) copies

19  of the copyright applications; and (3) copies of purported assignment agreements

20  between X17, on the one hand, and the photographers, on the other.  (Amir Decl., ¶¶

21  2, 5, Exs. 1-87 to Compendium.)

22  On March 6, 2007, this Court denied X17's motion for preliminary injunction

23  in its entirety. (*See* May 6, 2007 Order, Ex. 89 to Compendium ["Because of

24  evidentiary defects in Plaintiff's papers, Plaintiff has not met its burden of

25  persuasion."])  In its Order, the Court made the following finding with respect to the

26  purported assignment agreements that were attached to Ms. Navarre's declaration in

27  support of X17's reply:  "X17 makes not the slightest mention of who created the

28  documents, or how (and for what consideration) the assignments were obtained, or

1  even whether their signatories held legitimate claims to the copyrights in question."

2  (*Id.* at p. 3.)

3      **D.**    **X17 Identifies Itself As The "Author" Of The Copyrights.**

4         **1.**    **X17 Represents The Photographs As "Works Made For**

5                **Hire."**

6      The copyright application is a two-page document that contains nine separate

7  spaces or fields. (Form VA Application, Compendium Ex. 99.) Space 2 concerns

8  ownership of the work. (*Id.*) In particular, the applicant is asked whether the subject

9  is a "work made for hire." (*Id.*) The copyright application also contains detailed,

10 line-by-line instructions for applicants to follow. (*Id.*) The instructions for space 2

11 state:

12     **Name of Author:**   The fullest form of the author's name should be
       given. <u>Unless the work was "made for hire," the individual who</u>

13     <u>actually created the work is its "author."</u> In the case of a work made for
       hire, the statute provides that "the employer or other person for whom

14     the work was prepared is considered the employer."

15 (Ex. 98 to Compendium, emphasis added.)

16     X17 produced the copyright applications as part of its reply to the preliminary

17 injunction motion. (*See* Exhibits 1-87 to Compendium.) In each of the copyright

18 applications, X17 identifies itself as the "Author" and represents that the photograph

19 was a "work made for hire." (*Id.*) The applications contain no information

20 whatsoever about the actual photographers. (*Id.*) The applications also make no

21 reference to any assignment agreements. (*Id.*) The applications were all completed

22 by X17's litigation counsel in this case, the law firm of Turner Green Afrasabi &

23 Arledge. (*Id.*)

24        **2.**    **X17 Creates Assignment Agreements For This Lawsuit.**

25     In a last-ditch effort to salvage its motion for a preliminary injunction, X17

26 produced purported "assignment agreements" between the photographers who

27 actually took the photographs and X17. (*See* Exs. 1-87 to Compendium.) It is

28 undisputed that X17 created these agreements solely as a matter of litigation strategy.

Indeed, when deposed, the photographers admitted that they only signed the assignment agreements in order to assist X17 in the pending lawsuit against Lavandeira.

> Q. Let me try to see if I get what you are saying.  Your understanding in signing Exhibit 129 (the assignment agreement) was to help [Francois Navarre] and X17 in a lawsuit; correct?
>
> A. Right.
>
> Q. Was there any other purpose or reason for you signing Exhibit 129?
>
> A. No.

(Ruano Depo. at 34:17-23, Ex. 94 to Compendium.; *see, also,* Bebey Depo. at 52:22-25, Ex. 90; Mariotto Depo. at 23:6:19, Ex. 91; Sanchez Depo. at 38:8-39:12; 43:4-11, Ex. 92; Merino Depo. at 9:18-25, Ex. 93; Filho Depo at 17:11-18:2, 34:15:-18, Ex. 101 to Compendium.)

The photographers also testified that they have signed no written agreements with X17, other those signed in connection with this litigation.  (*See* Bebey Depo. 40:16-41:8, Ex. 90 to Compendium; Mariotto Depo. at 23:6:19, Ex. 91; Merino Depo. at 11:14-12:6, Ex. 93; Ruano Depo. at 11:25-12:5, Ex. 94, Filho Depo at 18:20-19:14, Ex. 101 to Compendium.)

In its rush to have the photographers sign assignment agreements to bolster their flagging claims in the lawsuit, X17 had two photographer assign rights to photographs which he did not even take.  In particular, photographer Carlos Ruano executed an assignment in favor of X17 with respect to four photographs.  (*See* Exhibit 129 of Ruano Depo. attached as Ex. 94 to Compendium.)  At his deposition, Mr. Ruano testified that he actually did not take two of the four photographs[2] identified in the assignment agreements:

> BY MR. AMIR: I'm going to give you Exhibit 128 and have you take a look at the picture

---

[2] The four photographs are attached as Exhibit 128 (a) through (d) to the Ruano deposition, which are now attached as Exhibit 96 to the Compendium.

DEFENDANTS' MEMORANDUM OF POINTS & AUTHORITIES

1   (Defendant's Exhibit 128 was marked for identification by the court
    reporter and attached hereto.)

2   THE DEPONENT:  This one is not me.

3   BY MR. AMIR:      No, that was not me (indicating).

4   Q. Okay.

5   A. This one is (indicating) – this one I – it wasn't me either.

6   Q. Are you sure?

7   A. I was there doing the video though, I remember.

8   Q. So, this is, for the record, B, you don't think you took that one?

9   A. No.

10  (Ruano at 13:23-14:15; 39:2-41:8, Ex. 94 to Compendium.)

11      Likewise, photographer Felix Filho testified that he did not take two of the

12  pictures that he "assigned" to X17.  (Filho Depo. at 36:23-37:3, Exs. 101-103 to

13  Compendium.)

14          **3.  X17 Fails To Disclose The Purported Assignment Agreements**

15              **To The Copyright Office.**

16      Space 4 in the application asks the claimant whether ownership was acquired

17  by a transfer.  (*See* VA Form, Ex. 99 to Compendium, ["If the claimant(s) named

18  here in space 4 is (are) different from the author(s) named in space 2, give a brief

19  statement of how the claimant(s) obtained ownership of the copyright"].)  The

20  instruction for space 4 specifically advises the claimant to reveal whether ownership

21  was acquired through an assignment:

22      **Transfer:**  The statute provides that, if the copyright claimant is not the
        author, the application for registration must contain a "brief statement of
23      how the claimant claimed ownership of the copyright."  If any copyright
        claimant named in space 4 is <u>not an author</u> named in space 2, give a
24      brief statement explaining how the claimant(s) <u>obtained ownership</u> of
        the copyright.  Examples: "By written contract;" "Transfer of rights by
25      author;" <u>Assignment</u>;" "By Will;"

26  (Form VA Instructions, Ex. 98 to Compendium, emphasis added.)

27

28

                                              7

1    Notwithstanding the plain language of the application and the detailed

2  instructions thereto, X17 made <u>no</u> reference of the actual photographers or the

3  purported assignments.  Thus, X17's <u>only</u> source of ownership, at least as revealed to

4  the United States Copyright Office, was through the "work made for hire" doctrine.

**4.     X17 Did Not Pay Photographers Any Consideration For**

**Signing The Assignments.**

7    Each of the assignment agreements states that "FOR GOOD AND

8  VALUABLE CONSIDERATION," the photographers assign all of their rights to

9  X17.  (*See* Exs. 1-87 to Compendium.)  At their depositions, however, the

10  photographers testified that X17 did not pay them any money in exchange for signing

11  the assignment agreements.  (*See* Bebey Depo., at 57:6-58:10; Mariotto Depo. at

12  35:4-21; Sanchez Depo. at 61:9-23; and Merino Depo. at 48:7-21; Filho Depo. at

13  51:21-52:10, Ex. 101 to Compendium.)

**E.     <u>None Of The Photographers Are X17 Employees.</u>**

15    Both X17 and the photographers who took the photographs at issue have

16  testified that the photographers are not employees, but rather independent

17  contractors.   For instance, X17's principal, Francois Navarre, testified at his

18  deposition that X17 has <u>no employees</u>:

19    Q.  Does X17 have any employees?

20    A. Not at this time.  We're in the process of doing it, but I don't
        know where we are in that, so I don't think it's fully (sic)
21        employees at this time, not yet, no.

22  (Navarre Depo. at 167:19-23, Ex. 97 to Compendium.)

23    The photographers confirmed that they were independent contractors, not

24  employees.

25    Q.    You consider yourself an independent contractor or an employee

26        of X17.

27    A.    I'm independent contractor.  I'm totally – how can I say that?  I

28        just deal with X17 only.  That's it.

Q.    All right.  You consider yourself an independent contractor; isn't that correct?

A.    Yes.

(Mariotto Depo. at 17:11-13, Ex. 91 to Compendium; *see also* Bebey Depo. at 8:24-12:18, Ex. 90 to Compendium)

The following is an excerpt from David Sanchez, the photographer who purportedly took many of the photographs:

Q.    Do you consider yourself an employee of X17?

A.    No self-employed.

Q.    Do you consider yourself an – have you heard of the term "independent contractor?"

A.    Yeah.

Q.    That's what you consider yourself?

A.    Uh-huh.

Q.    Yes?

A.    Yes.

(Sanchez Depo. at 18:13-21, Ex. 92 to Compendium.)

Finally, the following is from photographer Carlos Ruano's depositions:

Q. Are you an employee of X17?

A. He considers me as a freelance.

Q. Who considers you as a freelance?

A. [Francois Navarre] and pretty much me, I guess, when I do my taxes, that's the way I claim them.

Q. So you claim yourself as an independent contractor; right?

A. Right.

(Ruano at 9:21-10:3, Ex. 94 to Compendium; *see also* Filho Depo. at 8:3-12, Ex. 101 to Compendium)

**F.      X17 And Lavandeira Are Not Competitors.**

X17's business is separated into two separate parts: (1) licensing photographs to media outlets; and (2) operating an online website. (Navarre Depo. at 99:11-19, Ex. 97 to Compendium.) In his deposition, Francois Navarre, X17's principal, identified all of X17's competitors with respect to its licensing business. Mr. Navarre never even mentioned Lavandeira:

> Q. So let's start with the sale of photographs, that part of your business – is it fair to call that X17 agency?
>
> A. Yes.
>
> Q. So as to X17 agency, who are the competitors?
>
> A. Competitors are Wire Image, Splash agency, There's another one smaller, but still going, its Bower Griffin. Zuma. There's one called Zuma. What else? I mean sometimes we compete with AP. AP's, they are too Highlatores in (inaudible) or so. There's smaller one called Flynet. Going smaller and smaller, Ramie Productions or something.

(Navarre Depo. at 99:20-100:6, Ex. 97 to Compendium.)

In reality, Lavandeira cannot be a competitor of X17's in the licensing business because he is not in that business. (Lavandeira Decl. ¶ 7.) Accordingly, it cannot be disputed that he is not a competitor of X17's with respect to licensing.

X17 also has conceded that Lavandeira is not its competitor with respect to its online business:

> Q. Oh, no. Now I've moved on to on-line.
>
> A. X17, on-line, okay, so that's different. The competitor for X17 on-line from my point of view, the main competitor is TMZ.
>
> Q. Any other competitors?
>
> A. After that would come People.dot.com and after that there is a lot of small websites like entertainment go see websites.

(Navarre Depo. at 101:20-102:2, Ex. 97 to Compendium.)

Not only did X17 not identify Lavandeira as a competitor in the online business, when specifically asked whether Lavandeira is a competitor, X17

**DEFENDANTS' MEMORANDUM OF POINTS & AUTHORITIES**

affirmatively testified that Lavandeira was not its competitor and that the two

websites serve different purposes:

> Q. <u>And does X17 on-line dot com compete with Perez Hilton dot com?</u>
>
> A. <u>I think it's a different type of blog; I don't see – I see other blogs that are competitors but not him.</u>
>
> Q. So you don't see Perez Hilton dot com as a competitor of X17 on line; is that correct?
>
> A. It's a competitor when he steals our picture.
>
> Q. So where Perez Hilton do – and I'm just – I want to limit it to the website for now and is not Mr. Lavandeira, but I'm trying to find out if you believe that Perez Hilton dot com is similar to X17 on-line?
>
> A. As far as he doesn't use our picture, <u>it's not a competitor for me from my point of view.</u>

(Navarre Depo. at 36:25-38:15, Ex. 97 to Compendium.)

## III.   THE SUMMARY JUDGMENT STANDARD

Summary judgment is not "a disfavored procedural shortcut, but rather . . . an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 327 (1986). Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. Once the movant shows that there is no issue of fact, the burden shifts to the respondent to show there is a genuine issue for trial. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986). Because no genuine issue of material fact exists in this matter, Lavandeira is entitled to summary judgment.

## IV.   LAVANDEIRA IS ENTITLED TO SUMMARY JUDGMENT ON X17's COPYRIGHT CLAIM

Summary judgment should be granted on X17's copyright claim because the undisputed facts demonstrate that its purported copyright registrations are invalid. As discussed below, the law is clear that courts do not have subject matter jurisdiction in copyright infringement cases premised on invalid registrations.

**A.   X17's Copyright Registrations Are Invalid Because It Falsely Stated To The Copyright Office That The Photographs Were Works Made For Hire**

It is a fundamental tenet of copyright law that only the owner of a work can lawfully register the work with the United States Copyright Office. *Morgan, Inc. v. White Rock Distilleries, Inc.*, 230 F.Supp.2d 104 (D. Me. 2002) ("It is only the copyright *owner* that may apply for [copyright] registration."). Thus, a copyright registration based on an application submitted by one who does not own the work at issue is invalid as a matter of law. *Morgan*, 230 F.Supp.2d at 108-09 (holding that because the party submitting the copyright application was not the lawful owner of the works when he submitted the application, the registrations were invalid).

Here, X17 represented to the Copyright Office that it was the owner of the photographs at issue based on the doctrine of "work for hire." However, the undisputed facts demonstrate that there was no factual or legal basis for this representation. In particular, Sections 101(1) and (2) of the Copyright Act provide that a work may be "for hire" only in two specific circumstances: (1) "a work prepared by an employee within the scope of his or her employment;" or (2) certain works "specially ordered or commissioned." *See Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 109 S.Ct. 2166, 2177-78 (1989). Neither of these circumstances existed when X17 submitted its copyright applications.

**1. The Photographers Were Not Employees Of X17**

It is undisputed that the photographers who took the photographs were not employees of X17. In fact, Francois Navarre unequivocally admitted at his deposition that X17 has no employees. (Navarre Depo. at 167:19-23.) Significantly, the photographers testified that they were independent contractors for X17, not employees. (Mariotto Depo. at 17:11-13; Bebey Depo. at 8:24-12:18; Sanchez Depo. at 18:13-21; Ruano Depo at 9:21010:30; Filho Depo. at 8:3-12.) The law is clear that independent contractors are not employees for purposes of Section 101(1).

1  *Community for Creative Non-Violence*, 490 U.S. at 753.  Thus, the Supreme Court

2  held in *Community for Creative Non-Violence* that the <u>only</u> way an independent

3  contractor can create a "work for hire" is to satisfy the requirements of Section

4  101(2).  *Id.*

### 2.  The Photographs Were Not Specially Ordered Or Commissioned Works Under Section 101(2)

7  The only other way X17 may invoke the "work for hire doctrine" is if it

8  establishes that X17 "specially ordered or commissioned" the photographs as defined

9  by Section 101(2).  Here, X17 had no legal or factual basis for claiming that the

10  photographs fall within Section 101(2).  In particular, Section 101(2) has two

11  independent requirements:  (1) the work must fall within nine listed categories of

12  works; and (2) the parties must have agreed <u>in writing</u> that the work would be a work

13  for hire.  *Community for Creative Non-Violence*, 490 U.S. at 738.  Here, X17 cannot

14  satisfy either requirement.

15  First, the photographs plainly do not fall within any of the nine following

16  categories:

17  (1) a contribution to a collective work;
    (2) a part of a motion picture or other audiovisual work;
18  (3) a translation;
    (4) a supplementary work;
19  (5) a compilation;
    (6) an instructional text;
20  (7) a test;
    (8) answer material for a test; or
21  (9) an atlas.

22  17 U.S.C. § 101(2).

23  Second, X17 has not come forward with any evidence that X17 and the

24  photographers entered into written "work for hire" agreements whereby X17

25  "specially ordered or commissioned" the photographs.  Indeed, the photographers

26  testified that the "assignment agreements" were the only written agreements they

27  signed with X17, and these agreement plainly are not "work for hire" agreements.

28  (Compendium, Exs. 1-87.)

**DEFENDANTS' MEMORANDUM OF POINTS & AUTHORITIES**

Thus, X17 could not, as a matter of law, validly claim ownership rights to the photographs based on the "work for hire doctrine." As such, it was not the lawful owner of the photographs when it submitted the applications, and thus any resulting registrations are invalid as a matter of law. See, *Morgan*, 230 F.Supp.2d at 108-09 (because the party submitting the copyright application was not the lawful owner of the works when he submitted the application, the registrations were invalid).

**B.**  **An Invalid Copyright Registration Nullifies The Court's Subject Matter Jurisdiction In An Infringement Action.**

Because X17's copyright registrations are invalid, the Court has no subject matter jurisdiction over this case. The "predominant rule is that an invalid registration (involving material errors, fraud, or an incomplete application) nullifies the federal court's subject matter jurisdiction." *Torres-Negron v. J&N Records, LLC*, Nos. 06-2058, -2059, 2007 WL 2846117, at *7 (1st Cir. Oct. 2, 2007) (slip op.). Indeed, "in cases where a plaintiff's copyright registration has been invalidated because of a finding of fraud or intentional misrepresentation on the registration application, numerous district courts and the Second Circuit have concluded that the plaintiff's copyright is simply 'unenforceable' and have dismissed the claims without discussion of the merits[,] again indicating that a valid registration is necessary for federal jurisdiction." *Id.* at *8 (citations omitted).

Subject matter jurisdiction was found to be lacking on facts strikingly similar to the instant case in *Morgan, supra*. In that case, the plaintiff alleged that "Morgan Howarth filed the photographs at issue with the United States Copyright Office and obtained copyright registration for the photographs" in the name of Morgan Howarth. *Id.* at 108 (quoting the complaint). The question, then, was "whether Mr. Howarth was the owner of the copyright in the subject photographs at the time he registered them so that the registration had legal effect." *Id.* The complaint also alleged that the copyrights in the photographs belonged to Morgan, Inc. pursuant to the work for hire doctrine, which meant that "Morgan, Inc. was the author and owner

of the works from the moment of their creation." *Id.* Thus, "based on the allegations in the Amended Complaint[,] the copyright registration by Mr. Howarth, in the name of Mr. Howarth, who was not the author or owner of the copyright at the time of the registration, ha[d] no legal effect." *Id.*

The plaintiffs in *Morgan* argued that this was an inadvertent "misstatement or error on the registration application, as a result of Mr. Howarth completing the copyright registration documents without the assistance of counsel." *Id.* The court, however, rejected this argument. *Id.* The court elaborated as follows:

> First, given that to date Plaintiffs have founded their copyright infringement claim on three different factual theories of copyright ownership and registration, the Court does not believe that the registration contains any misstatement. Moreover, the Court finds the instructions on the registration documents quite clear with respect to who the owner is when the work is created by an employee and specifically asking if this was a work "made for hire."

230 F. Supp. 2d at 108. Thus, Morgan, Inc. was not the "lawful owner" of the copyrights when it registered them, and the court was therefore without jurisdiction to hear the copyright claim. *Id.* at 109.

Here, as discussed above in Section IV.A., X17 applied for the copyrights to the photographs based on the work for hire doctrine, without any factual basis for its claim that the photographs were works for hire. Based on these misrepresentations, and the fact that X17 was not in fact the owner of the photographs at the time it sought the registrations, X17's registrations are invalid as a matter of law. Because the registrations are invalid, the Court lacks subject matter jurisdiction, and thus Lavendeira is entitled to summary judgment on X17's first claim for relief for copyright infringement.

## V.     X17'S PURPORTED ASSIGNMENT AGREEMENTS DO NOT CURE X17'S INVALID REGISTRATIONS.

Despite its unequivocal representation to the Copyright Office that its photographs were "works for hire," X17 has produced in this litigation numerous

1  purported "assignment agreements."  X17's position appears to be that if the Court
2  finds that photographs were not works for hire, the Court nonetheless should deem
3  the registrations valid based on these assignment agreements.  This argument lacks
4  merit for several reasons.

5  **A.  X17 Failed To Submit The Assignment Agreements To The**
6  **Copyright Office**

7  The validity of X17's purported copyrights depends not on what X17 produces
8  in this litigation, but rather on what it represents to the Copyright Office.  In its
9  copyright applications, X17 clearly represented that the photographs were works for
10 hire, not that it obtained ownership rights through assignment.  Moreover, while the
11 Copyright Act does permit supplementary registration to correct mistakes in
12 registration (*see* 17 U.S.C. § 408(d)), X17 has produced no evidence to demonstrate
13 that it has filed any supplemental registration with the United States Copyright Office
14 to explain that it was mistaken when it indicated that each of the 87 photos at issue
15 here were "works made for hire."[3]  This failure renders the purported assignment
16 agreements meaningless.  *See, Morgan*, 230 F.Supp.2d at 108 (failure to submit
17 supplemental registration among factors requiring dismissal for lack of subject matter
18 jurisdiction).

19 **B.  Even If It Had Submitted The Assignments, X17 Cannot Use**
20 **Supplementary Registration To Validate An Invalid Registration**

21 X17 cannot use supplementary registration as a vehicle to change the basis of
22 its ownership from "work for hire" to assignment.  Supplemental registration may not
23 be used to reflect transfer of ownership.  *See*, 37 C.F.R. § 201.5(b)(2)(iii); *Rubloff v.*
24 *Donahue*, 31 U.S. P.Q.2d 1046, 1051 (N.D. Ill. 1994).  In *Rubloff*, plaintiff in an

25

26 [3] Lavandeira disputes that any inadvertent "mistake" was made here, as evidence
   demonstrates that X17's experienced attorney intentionally described each of the 87
27 photos as works for hire on the copyright registration forms despite knowledge that
   none of the photos were taken by X17 employees or pursuant to any written
28 agreement to perform work for hire for X17.

**DEFENDANTS' MEMORANDUM OF POINTS & AUTHORITIES**

infringement action was a company whose employees prepared portions of a training manual. The employees did not sign work for hire agreements with respect to the manual. The plaintiff nonetheless applied for, and obtained, a copyright registration of the manual as a work for hire. After the registration was issued, the plaintiff secured assignments from the employees. *Id.* at 1048. The defendant moved for summary judgment, arguing that the plaintiff's copyright was invalid as a matter of law because it did not own the copyrights at the time it applied for registration. The court agreed and granted the motion, holding that because the manual was not a work for hire as represented in the application, the registration was invalid. In reaching its holding, the court rejected plaintiff's argument that his effort to submit a supplemental registration based on the assignment was enough to save its claims. *Id.* at 1051.

So it is here – X17 submitted its applications based on a false claim that the photographs were works for hire. Because it did not in fact own the photographs under the work for hire doctrine, X17's registrations are invalid. Under the principles enunciated in *Rubloff*, X17 cannot now cure those defects by supplemental registration.

**C.   For At Least 56 Photographs, The Purported Assignments Occurred After X17 Submitted The Copyright Applications, And Thus Partial Summary Judgment Is Appropriate**

Even if merely producing the assignment agreements in litigation were sufficient (which plainly is not the case), the assignment agreements produced by X17 would not save the invalid registrations. The majority of the assignment agreements are dated <u>after</u> the copyright applications were submitted. It is well-established that a party seeking to register a copyright must own that copyright at the time the application is submitted. *Konisberg Int'l v. Rice*, 16 F.3d 355 (9th Cir. 1994). Moreover, as set forth in *Rubloff*, *supra*, assignment agreements obtained <u>after</u> registration cannot cure an invalid registration. 31 U.S.P.Q. at 1051. Thus,

17

even with the assignment agreements, X17 had no rights whatsoever to 54 of the photographs when it sought registration. Even worse, in at least two cases, the assignment agreements pertain to copyrights that were "transferred" by photographers who did not even take the photographs. Thus, at a minimum, partial summary judgment is appropriate for the following 56 photographs.

### 1.    The January 22, 2007 "Assignments"

In particular, 36 of the photos were not "assigned" to X17 until January 22, 2007 (*see*, Exhibits 2, 19, 20, 21, 22, 23, 24, 25, 34, 35, 36, 37, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77 and 78 (collectively the "January 22, 2007 Assigned Photos")). Yet, X17 applied to register these photographs one month earlier on December 28, 2006. (*see*, *id.*) Because X17 had no ownership rights at the time of registration, it had no right to file the applications for the 36 January 22, 2007 Assigned Photos, and thus the registrations for those photos have no legal effect. *Morgan,* 230 F.Supp.3d at 107. This Court lacks subject matter jurisdiction with respect to the claims based on each of those thirty-six photos, and thus, at a minimum, partial summary judgment is warranted with respect to those photographs.

### 2.    The Undated November 2006 "Assignments"

X17 also failed to establish that it had ownership rights with respect to seventeen photographs purportedly assigned pursuant to assignment agreements from November 2006. X17 submitted those photos to the United States Copyright Office on November 27, 2006 (exhibits 30, 32, 33, 46, 47, 48, 49, 50, 51, 52, 53 and 54) and November 28, 2006 (exhibits 26, 27, 28, 29 and 31). X17 had no ownership rights prior to entering into assignment agreements with the photographers that took the these photographs. The assignment agreements X17 produced in connection with each of those photographs are undated, containing the blank designation, "effective as of the __ day of November, 2006." (Exs. 26, 27, 28, 29, 30, 31, 32, 33, 46, 47, 48, 49, 50, 51, 52, 53 and 54). Because X17 has failed to establish that it obtained the

assignments of ownership rights with respect to the undated November 2006 Assigned Photos prior to the dates it sought registration, the registrations for those photos are invalid as well. (*Id.*) This Court lacks subject matter jurisdiction with respect to the claims based on each of those seventeen photos and thus, at a minimum, partial summary judgment is warranted with respect to those photographs.

### 3. The Improperly Assigned Photographs

X17 purports to assert ownership rights in four photographs (Exhibits 82, 83, 102 and 103 to Compendium) as a result of an assignment agreement signed by photographer Carlos Ruano. However, at their depositions, Messrs. Ruano and Filho testified that they did not take those photos.[4] (Ruano at 13:23-14:15; 39:2-41:8; Filho Depo. at 36:23-37:3.) Nonetheless, X17 purports to assert ownership rights in those photos as a result of an assignment agreement with Messrs. Ruano and Filho. (Exs. 82, 83, 102.) Because these two had no rights to assign to X17, the purported assignment agreements are ineffective, rendering the registration for Exhibits 82, 83, 102 and 103 even more invalid. *Morgan* at 107. This Court lacks subject matter jurisdiction with respect to the claims based on each of those photos and thus, at a minimum, partial summary judgment is warranted with respect to those photos.

## VI. AT A MINIMUM, X17 IS NOT ENTITLED TO STATUTORY DAMAGES, AS IT FAILED TO FILE FOR REGISTRATION PRIOR TO THE ALLEGED INFRINGEMENT (OR WITHIN THE THREE MONTH GRACE PERIOD).

### A. The Requirements For Statutory Damages And Attorneys' Fees.

In the event the Court does not dismiss X17's copyright claims, it should grant partial summary judgment on the issue of statutory damages and attorneys' fees. In order to qualify for such relief, the work at issue must be registered with the United States Copyright Office prior to the commencement of the infringement. *See Berlyn,*

---

[4]    Exhibits 82 and 83 to the concurrently filed Compendium were part of Exhibit 94. The assignment agreement was attached as Exhibit 129 to Mr. Ruano's deposition.

1 *Inc. v. Gazette Newspapers, Inc.,* 157 F. Supp. 2d 609, 624 (D.Md. 2001).

2 "Commencement" of the infringement means "the time when the first act of

3 infringement in a series of ongoing discrete infringements occur." *Johnson v. Jones,*

4 149 F.3d 494, 505-06 (6th Cir. 1998). Here, with respect to each of the 87 photos at

5 issue in this case, X17's registration application was not submitted until after the

6 commencement of the purported infringement. (*See* Exhibit 1-87; FAC ¶¶ 13-58.)

7     **B.**    **It Is Undisputed That X17 Cannot Meet The Requirements For**

8            **Statutory Damages And Attorneys' Fees On At Least 18**

9            **Photographs.**

10     Although the Copyright Act allows for a three-month grace period to register

11 after the first publication, *see* 17 U.S.C. § 412, X17 applied for registration well after

12 the three-month grace period with respect to 18 of the photographs at issue here. As

13 a result, X17 is not entitled to statutory damages and attorneys fees with respect to

14 each of the following photos:

15     •  Exhibit 6. X17 represented to the United States Copyright Office that

16       the date of first publication for this photo was December 5, 2004. X17

17       filed its application for registration on November 28, 2006, well after the

18       three month grace period.

19     •  Exhibit 7. X17 represented to the United States Copyright Office that

20       the date of first publication for this photo was October 8, 2004. X17

21       filed its application for registration on November 27, 2006, well after the

22       three month grace period.

23     •  Exhibit 8. X17 represented to the United States Copyright Office that

      the date of first publication for this photo was July 31, 2005. X17 filed

24       its application for registration on November 28, 2006, well after the

25       three month grace period.

26     •  Exhibit 9. X17 represented to the United States Copyright Office that

27       the date of first publication for this photo was March 22, 2006. X17

28       filed its application for registration on November 27, 2006, well after the

DEFENDANTS' MEMORANDUM OF POINTS & AUTHORITIES

three month grace period.

- <u>Exhibit 10</u>. X17 represented to the United States Copyright Office that the date of first publication for this photo was March 22, 2006. X17 filed its application for registration on November 27, 2006, well after the three month grace period.

- <u>Exhibit 14</u>. X17 represented to the United States Copyright Office that the date of first publication for this photo was April 28, 2006. X17 filed its application for registration on November 27, 2006, well after the three month grace period.

- <u>Exhibit 15</u>. X17 represented to the United States Copyright Office that the date of first publication for this photo was April 22, 2006. X17 filed its application for registration on November 27, 2006, well after the three month grace period.

- <u>Exhibit 16</u>. X17 represented to the United States Copyright Office that the date of first publication for this photo was April 22, 2006. X17 filed its application for registration on November 27, 2006, well after the three month grace period.

- <u>Exhibit 17</u>. X17 represented to the United States Copyright Office that the date of first publication for this photo was April 22, 2006. X17 filed its application for registration on November 27, 2006, well after the three month grace period.

- <u>Exhibit 18</u>. X17 represented to the United States Copyright Office that the date of first publication for this photo was April 22, 2006. X17 filed its application for registration on November 27, 2006, well after the three month grace period.

- <u>Exhibit 26</u>. X17 represented to the United States Copyright Office that the date of first publication for this photo was May 27, 2005. X17 filed its application for registration on November 28, 2006, well after the three month grace period.

- <u>Exhibit 27</u>. X17 represented to the United States Copyright Office that

DEFENDANTS' MEMORANDUM OF POINTS & AUTHORITIES

the date of first publication for this photo was October 31, 2004. X17 filed its application for registration on November 28, 2006, well after the three month grace period.

- <u>Exhibit 28</u>. X17 represented to the United States Copyright Office that the date of first publication for this photo was October 31, 2004. X17 filed its application for registration on November 28, 2006, well after the three month grace period.

- <u>Exhibit 29</u>. X17 represented to the United States Copyright Office that the date of first publication for this photo was October 31, 2004. X17 filed its application for registration on November 28, 2006, well after the three month grace period.

- <u>Exhibit 39</u>. X17 represented to the United States Copyright Office that the date of first publication for this photo was May 29, 2006. X17 filed its application for registration on November 27, 2006, well after the three month grace period.

- <u>Exhibit 53</u>. X17 represented to the United States Copyright Office that the date of first publication for this photo was February 24, 2006. X17 filed its application for registration on November 27, 2006, well after the three month grace period.

- <u>Exhibit 54</u>. X17 represented to the United States Copyright Office that the date of first publication for this photo was February 24, 2006. X17 filed its application for registration on November 27, 2006, well after the three month grace period.

- <u>Exhibit 79</u>. X17 represented to the United States Copyright Office that the date of first publication for this photo was January 17, 2005. X17 filed its application for registration on November 29, 2006, well after the three month grace period.

**C.**       **Partial Summary Judgment Is Appropriate On The Issue Of Statutory Damages And Fees.**

Partial summary judgment is appropriate where, as here, the plaintiff fails to meet the prerequisites for statutory damages and attorneys' fees. *See Qualey v. Caring Center of Slidell*, 942 F. Supp. 1074 (E.D.La. 1996). In *Qualey*, Defendants moved for summary judgment on the issue of plaintiff's entitlement to statutory damages and attorneys fees. Defendants argued no entitlement to statutory damages because the allegedly infringing conduct took place prior to registration, as well as prior to first publication (plaintiff registered with the copyright office on June 14, 1994 and June 17, 1994; the date of first publication was March 25, 1994; the allegedly infringing conduct took place in October of 1993). The Court granted the motion for summary judgment in part, holding that "plaintiff is precluded from recovering statutory damages or attorneys fees for any infringement of the technical drawings. . . defendants are entitled to judgment as a matter of law in their favor on that issue." *Id.* at 1077.

*Johnson v. University of Virginia*, 606 F. Supp. 321, 324 (D.C.Va. 1985) also is on point. There, the Defendants filed motions to dismiss and motions for summary judgment. With respect to the statutory damages claim, defendants argued that registration took place after the alleged infringement and after the 3 month grace period (the photographs at issue here were not registered until March 12, 1984; date of first publication was September 2, 1983; the alleged infringement took place in January 1984), and thus plaintiffs were not entitled to statutory damages. Plaintiff argued that his claim for statutory damages was not barred because defendants continued to infringe following registration. The court held, however, that the alleged post-registration infringements involved the same photographs allegedly infringed in January of 1984. "Consequently, those alleged post-registration infringements 'commenced' prior to registration, and thus pursuant to § 412, they provide no basis for allowing statutory damages or attorney's fees." Id. at

325. The Court concluded: "Therefore, the court rejects plaintiff's arguments, and grants defendants' motions insofar as they request that plaintiff's claim for statutory damages and attorney's fees be denied." *Id*; *see also William A. Graham Co. v. Haughey*, 430 F. Supp. 2d 458 (E.D.Pa. 2006) (court granted the motion for summary judgment in part, as there was no dispute that, with respect to some of the claims, the alleged infringement took place prior to registration).

Here, the Court should grant partial summary judgment (i.e., strike the request for statutory damages and attorneys' fees) on the 18 photographs discussed above because X17 has not, as a matter of law, satisfied the statutory requirements.

## VII. **LAVANDEIRA IS ENTITLED TO SUMMARY JUDGMENT ON X17'S "HOT NEWS" CLAIM.**

X17 cannot prevail on its claim for misappropriation of "hot news." X17 bases that claim on *National Basketball Assn. v. Motorola*, 105 F.3d 841 (2d Cir. 1997) ("*NBA v. Motorola*"), which concerned a claim for "hot news" misappropriation under New York state law. Two key elements of that claim are (1) the defendant's use of the information is in direct competition with a product or service offered by the plaintiff; and (2) the ability of others to free-ride on the efforts of the plaintiff would so reduce the incentive to produce the product or service that its existence would be substantially threatened. *Id.* at 852.

The undisputed facts establish that X17 cannot meet the foregoing two elements. For example, X17 has admitted that it is not Lavandeira's competitor, much less his "direct competitor." In order to satisfy this element, X17 must show that Lavandeira competes with X17 in its primary market. *NBA v. Motorola*, 103 F.3d at 853 ("[a]ppeals to the misappropriation doctrine are almost always rejected when the appropriation does not intrude on the plaintiff's primary market," quoting *Restatement (Third) of Unfair Competition*, § 38). Here, there is no evidence to support the argument that the two are competitors. Indeed, the evidence is to the contrary, *i.e.*, that they are not competitors. (*See* Navarre at 36:25-38:15.)

1    X17 also cannot prove the other element of a "hot news" misappropriation

2  claim – namely, that its "existence would be substantially threatened" by Lavandeira.

3  This element requires that "defendant's actions must make plaintiff virtually cease to

4  participate in the business in question." *Fred Wehrenberg Circuit of Theatres v.*

5  *Moviefone*, 73 F.Supp.2d 1044, 1050 (E.D. Mo. 1999); *see also*, *International News*

6  *Association v. Associated Press*, 248 U.S. 215, 241 (1981) (defendant's actions must

7  render the production and publication "profitless or so little profitable so as to cut off

8  the service by rendering the cost prohibitive in comparison with the return")  The

9  undisputed evidence demonstrates that X17 has not ceased "to participate in the

10  business in question."  X17 has come forward with no evidence to suggest that X17's

11  business has even been harmed by Lavandeira.  More importantly, X17 has failed to

12  come forward with any evidence to support the proposition that Lavandeira is driving

13  X17 out of business.  The Court should accordingly dismiss the second claim for

14  relief.

15  **VIII.  CONCLUSION**

16    For the foregoing reasons, defendant's Motion for Summary Judgment, or in

17  the alternative, Partial Summary Judgment, should be granted.

18  Dated:  December 17, 2007      **FREEDMAN & TAITELMAN LLP**

19                **DOLL AMIR & ELEY LLP**

20

21

22  By: _____

23        Bryan J. Freedman
        Attorneys for Defendant
24        MARIO LAVANDEIRA dba
        Perez Hilton

25

26

27

28

**DEFENDANTS' MEMORANDUM OF POINTS & AUTHORITIES**